(No. 3203—

JANE KEHOE, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 16, 1939.*

A. J. CLARITY and FRANK R. EAGLETON, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

For some time prior to, and on the 18th day of August, A. D. 1937, claimant's son, Donald Kehoe, was employed as a laborer in the maintenance department of the Division of Highways, Department of Public Works and Buildings of the State of Illinois, and on the last mentioned date was engaged in painting Turtle Creek Bridge, located on S. B. I. Route No. 2 just north of the Village of South Beloit, Illinois. While engaged in the work of his employment, the ladder upon which he was working was struck by an automobile driven by one Herbert Johnson, as the result of which said Donald Kehoe was thrown against one of the beams of said bridge and sustained a fracture of the skull, as well as other injuries, from which he died within the course of a few minutes.

From the evidence in the record it satisfactorily appears that on the 18th day of August, A. D. 1937, the said Donald Kehoe and the respondent were operating under the provisions of the Workmen's Compensation Act of this State; that on said date the said Donald Kehoe sustained accidental injuries which arose out of and in the course of his employment, and which resulted in his death on the same day; that notice of the accident was given to the respondent, and claim for compensation on account thereof was made within the time required by the provisions of the Compensation Act; that said Donald Kehoe was not in the employ of the respondent for the full year immediately preceding the accident; that his

daily wage was Fifty Cents (50c) per hour, and he worked eight (8) hours per day; that at the time of the accident in question he was twenty-five (25) years of age, and unmarried; that he left him surviving the claimant Jane Kehoe, his mother, with whom he resided at the time of his death, as well as eight (8) brothers and sisters; that Donald Kehoe's father left the family about twenty-two (22) years prior to the accident in question, and has not since been heard from; that said Donald Kehoe was the only one of claimant's children who contributed anything towards her support within the period of several years prior to the death of said Donald Kehoe.

The evidence satisfactorily shows that Herbert Johnson, who was the driver of the automobile which struck the ladder on which claimant's intestate was working, died as the result of the accident in question; that he owned no money or property out of which a judgment could be satisfied either in whole or in part.

The only questions in dispute are:

1. The basis upon which the compensation is to be computed.

2. The extent of the dependency of the claimant Jane Kehoe.

3. The amount of the compensation to which she is entitled under the provisions of the Workmen's Compensation Act.

The basis for computing the compensation to be paid under the provisions of the Workmen's Compensation Act in cases of this kind is fixed by Section 10, Paragraphs (a), (b), (c), (d), and (e) which read as follows:

"(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause.

(c) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location, (or if that be impracticable, of neighboring employments of the same kind) have earned during such period.

(d) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation.

(e) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of 300 as a basis for computing the annual earnings: *Provided*, the minimum number of days which shall be so used for the basis of the year's work shall be not less than 200."

Claimant contends that Kehoe was engaged in the work of maintaining highways; that such work is an employment in which it is the custom to operate throughout the working days of the year; that Kehoe's annual earnings should be determined in accordance with the provisions of the afore-mentioned paragraph (d); that under the provisions of such paragraph, his annual earnings should be determined by multiplying the amount of his daily wage, to wit, Four Dollars ($4.00), by three hundred (300).

The respondent contends that Kehoe was working as a painter; that painting is an employment in which it is the custom to operate for a part of the whole number of working days in each year; that Kehoe's annual earnings should be determined in accordance with the provisions of the afore-mentioned paragraph (e); that under the provisions of such paragraph, his annual earnings should be determined by multiplying the amount of his daily wage by 200.

The basis upon which the compensation is to be computed, therefore, depends upon the proper construction of the several paragraphs of said Section 10 of the Compensation Act.

The matter of such construction was before our Supreme Court in the case of *Ruda* vs. *Industrial Board*, 283 Ill. 550, where the court, on page 543, said:

"It is a cardinal rule in construing statutes that they are to be construed so as to give effect to each word, clause and sentence, so that no word, clause or sentence shall be considered superfluous or void, (*Crozer* vs. *People*, 206 Ill. 464; *People* vs. *Flynn*, 265 id. 414; 36 Cyc. 1128); and a statute should be so construed, if possible, as to give to each word and sentence its ordinary and accepted meaning. (*Crozer* vs. *People*, *supra*.) The word 'minimum' is defined as 'the least possible quantity, amount or degree that can be assigned in a given case or under fixed conditions.' (New Standard Dict.; 27 Cyc. 793.) In reaching the proper construction to be placed upon any provision of a statute the whole should be construed together in order to get the intention of the legislature, as one part may furnish an explanation

of another. (*Maiss* vs. *Metropolitan Amusement Ass'n.*, 241 Ill. 177.) Reading all of said section together we think it is quite manifest that the legislature intended, if the employment operated all the working days of the year and an injured employee's wages were not determinable otherwise, that three hundred should be taken as a basis from which to calculate his compensation; that if the employment operated only a part of the working days, such number, if the injured employee's annual earnings were not otherwise determinable, should be taken as a basis, but that in any event no less than two hundred days should be used in such computation. Paragraph (c) has reference, obviously, to a situation where the employee has not worked for the same employer a full year prior to the accident, whether persons in that employment customarily worked all of the working days in the year or not. Paragraph (d) has reference solely to a situation where the employment operated all of such working days and provides the method of computing compensation if not otherwise determinable, while paragraph (c) is intended to cover a different situation—that is, ascertaining a basis where the working days are intermittent—and where in this proviso an express limitation is added, viz., that no less than two hundred days shall be taken as the minimum. (Harper on Workmen's Compensation, sec. 172.) Paragraph (c) does not provide, as do some of the other paragraphs, that if the annual earnings are not otherwise determinable two hundred days shall be used as a basis but does clearly state that in any event the minimum shall not be less than two hundred days, and this was the construction put upon this statute by the Industrial Board in this proceeding and it has been so construed by the board in other cases."

The only other authorities cited by counsel for either side, bearing upon this question, are the following: *Stellwagen* vs. *Ind. Com.*, 359 Ill. 557; *Truax-Traer Coal Co.* vs. *Ind. Co.*, 362 Ill. 75; and *Puttkamer* vs. *Ind. Com.*, 371 Ill. 498; 21 N. E. 2d, 575.

There is nothing in any of such cases which conflicts in any way with the views expressed in the *Ruda* case, *supra*.

In the *Stellwagen* case, the employer was engaged in the real estate business, and although his business apparently operated all of the working days of the year, yet the work of the employee was part time work. In that case the court said:

"The employment of defendant in error was such that it would customarily engage him only a part of the whole number of working days, depending upon the weather and circumstances. In such case Section 10e applies, and the award was properly based on a daily wage of $8.00 multiplied by the two hundred day minimum to determine the average annual earnings."

As we view the matter, the several provisions of Section 10 must be considered together in order to obtain the true intent and meaning of the section.

Although the work of some of the divisions of the Highway Department continues throughout the working days of the year, yet the work in which claimant's intestate was engaged at the time of his death operated less than 200 working days during the year.

Claimant's intestate was not engaged in the employment of the State for the full year immediately preceding the accident, and the annual earnings during such period, of persons of the same class, in the same employment and same location, does not appear from the record.

Considering said Section 10 as a whole, and considering also the aforementioned decisions of our Supreme Court construing the meaning of such section, and considering the facts in the record, we conclude that the annual earnings of the claimant's intestate must be ascertained by multiplying his daily wage, to wit, Four Dollars ($4.00), by the two hundred (200) day minimum.

The extent of the dependency of the claimant, Jane Kehoe, is a question of fact, and the amount of compensation to which she is entitled must be determined in accordance with the provisions of Section Seven (7) of the Workmen's Compensation Act.

Counsel for claimant contends that she was totally dependent upon the earnings of her son for her support, and that the amount of compensation to which she is entitled must be computed in accordance with the provisions of paragraph (b) of said Section Seven (7) which provides, in effect, that where an employee does not leave a widow, child or children whom he was under obligation to support, but leaves a parent, husband, child or children who at the time of the injury were totally dependent upon the earnings of the employee, then the compensation shall be "a sum equal to four times the average annual earnings of the employee, but not less in any event than two thousand five hundred dollars and not more in any event than four thousand dollars."

The respondent contends that the dependency of the claimant upon the earnings of her son was but partial, and that the amount of compensation to which claimant is entitled must be computed in accordance with the provisions of Section (c) of said Section Seven (7), which provides, in effect, that if the employee leaves no widow, child or children whom he was under legal obligation to support, but leaves any

parent or parents, child or children, who at the time of the injury were partially dependent upon the earnings of the employee, then the compensation shall be ''such proportion of a sum equal to four times the average annual earnings of the employee as such dependency bears to the total dependency, but not less in any event than one thousand dollars and not more in any event than three thousand seven hundred fifty dollars.''

It is clear from the facts in the record that the claimant was not totally dependent upon the earnings of her son for her support. For several years prior to the death of her son, claimant maintained a rooming house in which she kept one or two regular boarders, and also served meals to such boarders and others. Her earnings were not large, but they constituted a substantial portion of the cost of her maintenance, and consequently the amount of compensation to which she is entitled must be considered on the basis of partial dependency rather than total dependency.

The facts in the record show that Donald Kehoe was an exceptionally fine young man; that he was extremely devoted to his mother; that he was the only one of her children who provided for her support, all of her other children being married and having families of their own; that during the school year he attended school at Dubuque and worked before and after school hours and on holidays at any work he might be able to get, and thereby provided for his own support, maintenance and education; that during the summer months he was extremely active and managed to keep employed the greater part of the time at some kind of work; that during the year preceding his death his earnings in the summer months from his employment by the State of Illinois aggregated $223.70, all of which was turned over to his mother; that in addition to such sum he earned small amounts from other employers during the summer and thereby provided for his own wearing apparel and miscellaneous items of living expenses and made small contributions to his mother.

No amount of money that this court could award the claimant would compensate her for the loss she has sustained by reason of the death of her son. However, in allowing awards in compensation cases, we must be governed solely by the provisions of the Workmen's Compensation Act, and

our award can be determined only in accordance with the provisions of such Act.

After carefully considering all of the evidence in the case, including the earnings of the claimant from her rooming house and from serving meals, as well as the earnings and contributions of her son, we have concluded that the dependency of the claimant upon the earnings of her son was fifty per cent (50%) of the total dependency.

Four times the average annual earnings of Donald Kehoe, as hereinbefore set forth, aggregates Thirty-two Hundred Dollars ($3,200.00), and therefore the amount of compensation to which claimant is entitled in accordance with the provisions of the Workmen's Compensation Act, is Sixteen Hundred Dollars ($1,600.00), payable in weekly installments of Seven Dollars and Sixty-nine Cents ($7.69), commencing August 19, 1937.

Compensation has accrued from August 19, 1937, to November 15, 1939, to wit, for One Hundred Seventeen (117) weeks; that is to say, the sum of Eight Hundred Ninety-nine Dollars and Seventy-three Cents ($899.73).

Award is therefore entered in favor of the claimant for the sum of Sixteen Hundred Dollars ($1,600.00), payable as follows, to wit: The sum of Eight Hundred Ninety-nine Dollars and Seventy-three Cents ($899.73) shall be paid forthwith; and the balance of said award, to wit, the sum of Seven Hundred Dollars and Twenty-seven Cents ($700.27), shall be paid in weekly installments of Seven Dollars and Sixty-nine Cents ($7.69), commencing November 22, 1939.

This award being subject to the provisions of an Act entitled "An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof" (Illinois Revised Statutes 1939, State Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Moneys until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided by the foregoing Acts.